# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERALD PAUL BODET JR.** Et. al. | |
| **Plaintiff** | **CLASS ACTION COMPLAINT** |
| v. | No. **09-3068** |
| **CHARTER COMMUNICATIONS INC. AND CHARTER COMMUNICATIONS HOLDING COMPANY, LLC.** | **SECT. F MAG. 1** |
| **Defendants** | |

## CLASS ACTION COMPLAINT

The petition of **Gerald Paul Bodet, Jr., individually and on behalf of all others similarly situated**," (hereinafter referred to as Plaintiff, Plaintiffs or Bodet.) is a person of the full age of majority and domiciled in the Parish St. Tammany, State of Louisiana, respectfully represents:

1.

Made defendants herein are **CHARTER COMMUNICATIONS, INC.,** and **CHARTER COMMUNICATIONS HOLDING COMPANY, LLC.**, (hereinafter referred to jointly as "Charter") a foreign corporation authorized to do business in the State of Louisiana, which provides premium cable services to Bodet's residence located in the Parish of St. Tammany.

**2.**

Bodet is and has been a subscriber of premium cable television services provided by Charter for a number of years.

**3.**

Bodet has no choice but to pay a rental fee for a "cable box" or "set-top box" in order to view premium cable for which he pays a separate fee. Further, Bodet has no choice but to contract with Charter for cable television service. Bodet pays $7.00 a month for two separate boxes totaling $168.00 a year for the box rental.

**4.**

Charter's actions in forcing the rental of the cable box constitute an unlawful tying arrangement resulting in an impermissible restraint of trade, in violation of both state and federal law.

**5.**

The activities of Charter have and will continue to threaten to have substantial adverse competitive effects upon both interstate commerce and upon commerce within the State of Louisiana and throughout the nation.

## JURISDICTION AND VENUE

**6.**

This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1337 in that Plaintiff on his own behalf and on behalf of the Class, asserts claims under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2.

**7.**

Venue is proper in the Eastern District of Louisiana under 28 U.S.C. §§ 1391 and 15 U.S.C. §22.

## FACTUAL ALLEGATIONS

**8.**

Charter is the third largest publicly traded cable operator in the United States. Further, Charter is the largest cable operator on the North shore of Lake Ponchartrain in Louisiana and offers a variety of entertainment and communications products and services throughout several states. Charter serves over five million customers with its cable operators.

**9.**

Charter provides cable-based services, include cable television, high-speed internet, and telephone customers in several states. Further, on information and belief, Charter has more than a 50% share of the cable television the markets it serves in Louisiana.

**10.**

Charter was incorporated under the laws of Delaware. Through itself and its predecessors, Charter has develops, manages and operates cable systems.

**11.**

Charter classifies its operations in two reportable segments: Cable and Programming. Charter's cable segment, which generates a portion of its consolidated revenues, manages and operates its cable systems, including video, high-speed internet and telephone services, as well as its regional sports and news networks.

**12.**

Customers that subscribe to Charter's premium cable services (such as Bodet) pay a monthly fee for cable.

**13.**

Bodet and other customers who elect to receive premium cable services receive specialty programming by way of their cable box.

**14.**

In addition to paying a fee for cable, customers such as Bodet that pay for premium channels must also pay a rental fee to Charter for a set-top box. The set-top box consists of a converter box and cable descrambler. On information and belief, the set-top box is required in order for customers such as Bodet to view the premium channels. In other words, premium channels can only be viewed by Charter customers if the customers also have a set-top box.

**15.**

Charter requires customers such as Bodet to rent a cable box directly from it and not other sources, even though cable boxes are available on the open market that would readily permit Charter customers to view the premium channels offered by Charter. Thus, Charter ties its premium channel cable service with the cable box that it requires customers such as Bodet to rent. Importantly, the premium channel cable service and the cable box are separate and distinct products.

**16.**

Although cable boxes are manufactured by numerous entities, upon information and belief, the market is dominated by Scientific Atlantic and Motorolla, companies that provide cable boxes to Charter and a small group of other cable providers. If not for the tying of products, customers such as Bodet could purchase a cable box from a manufacturer of their choice and use it to view the premium cable channels provided (for a cost) by Charter.

**17.**

The choice to use other cable boxes, however, is not available to Bodet and other Charter customers as a result of Charter's practice of tying its premium channel cable service with the cable box. By its conduct, Charter coerces Bodet and its premium cable customers to pay a significantly larger sum of money that would be required if the two distinct products (premium cable and cable box) were not tied by Defendant. Indeed, in a matter of months, the rental fees that customers such as Bodet are forced to pay for the cable boxes supplied by Charter greatly exceed their worth.

**18.**

Charter is simply purchasing cable boxes at a fixed and relatively low cost from certain manufacturers, only to turn around and rent the very same boxes to customers such as Bodet, with full knowledge that customer such as Bodet, as a result of Charter's improper conduct, has no choice but to pay the rental fees charged by Charter. Upon information and belief, the market for cable boxes involves a significant and not insubstantial amount of interstate commerce.

19.

The improprieties of tying cable services to rental of a cable box has been investigated by the Federal Communications Commission ("FCC"), which has long recognized the lack of competition in the cable industry, resulting from monopolistic actions of cable companies. As such, the FCC adopted a regulation requiring the cable industry to separate the descrambling and other security capabilities of a cable box and place the capabilities in a separate device which is called a CableCARD.

20.

A CableCARD is a credit card-size device which performs the same "security" and "descrambling" functions provided by set-top cable boxes. Charters, and all other cable operations, are required by FCC rules to make CableCARD devices available to consumers.

21.

Charter's actions allow it to unfairly utilize its market power/economic power and/or monopoly in the Louisiana and other markets it serves, thereby harming customers such as Bodet.

### COUNT I
### (Violation of the Sherman Anti-Trust Act- Unlawful Tying)

22.

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

**23.**

Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, makes it unlawful to enter into a contract in restraint of trade or commerce. Congress has granted a private right of action to those injured in violation of this provision.

**24.**

Bodet seeks to redress for Charter's violation of Section 1 of the Sherman Anti-Trust Act.

**25.**

Charter improperly ties and bundles its premium cable service with the necessary rental of a set-top cable box. Specifically and as explained above, Charter contracted with customers such as Bodet to provide cable service but only on the condition that Bodet also rent a set-top cable box from Charter.

**26.**

As a result, Bodet cannot unbundle the tied products (the premium cable service and the cable box).

**27.**

Instead, Customer such as Bodet are forced to pay rental fees for the cable box, in addition to fees for cable service. Charter's conduct is particularly acute and egregious, given it is one of the largest cable service provides in Louisiana and the entire United States.

**28.**

Charter has, at all times relevant to this action, maintained sufficient economic power in the cable market to coerce Bodet and its customers in his same position to lease and/or accept the tied product (the cable box).

**29.**

Charter's improper tying and bundling harms competition. Upon information and belief, just two manufacturers of cable boxes dominate the industry and they provide most of their products to Charter and a small group of other cable service providers. Since customers such as Bodet can only lease cable boxes directly from Charter, there is little motivation for other manufacturers to enter the market, and those that do are foreclosed from renting and/or selling cable boxes directly to customers such as Bodet at a lower, market-driven, cost.

**30.**

There is a market for cable boxes that is separate and apart from the market for Charter cable services. The two items (cable service and the cable box) are distinct and separate items.

**31.**

Charter has, at all times relevant to this action, maintained sufficient economic power in the cable market to coerce customers such as Bodet to lease and/or otherwise accept the tied product (the cable box) that they would not otherwise lease or accept from Charter. This economic power will continued absent the relief sought herein.

**32.**

Charter's conduct at issue involves a substantial amount of interstate commerce in the market for cable boxes and related markets.

**33.**

Charter's tying and bundling of its cable service and cable boxes constitutes an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

**34.**

Charter's tying and bundling activities have an adverse impact upon cable consumers and competition.

**35.**

There is no lawful business justification for Charter's actions.

**36.**

### COUNT II
### (Violation of Unfair Trade Practices and Consumer Protection Law Louisiana Revised State 51:1401.)

**37.**

This cause of action is brought on behalf of Bodet pursuant to the Unfair Trade Practices and Consumer Protection Law afforded to the citizens of Louisiana.

**38.**

Bodet alleges that Charter committed the unethical, oppressive, unscrupulous, and substantially injurious actions to customers such as Bodet as explained, discussed, and set forth in detail above.

**39.**

Charter's actions, as described in detail above, have a capacity, tendency and/or likelihood to deceive or confuse customers such as Bodet.

**40.**

Charter has committed unlawful business practices in connection with providing cable services to customers such as Bodet and the general public.

**41.**

Charter's actions, as discussed above, have a capacity, tendency or likelihood to deceive or confuse customers such as Bodet regarding its cable services.

**42.**

The unlawful, unfair and illegal acts and practices of Charter, as explained and discussed above, present a threat to customers such as Bodet in that Charter is able to carry on its unlawful scheme without suffering the consequences of legal action and violations of law.

**43.**

Bodet is informed and believes and thereon alleges that Charter continues these unlawful, unfair and/or fraudulent business practices alleged herein.

**44.**

Charter's actions constitute and unlawful, unfair or fraudulent business practice with the meaning of the Louisiana Unfair Trade Practices and Consumer Protection Law sections 51:1401 *et. seq.* Customers such as Bodet and the general public were, and are likely to be, deceived by Charter's actions discussed above.

**45.**

Bodet has suffered an ascertainable loss of money from the actions of Charter as detailed above and Louisiana Revised Statute 51:1409(A) confers a private right of action for this unfair

trade practice. Bodet seeks an order restoring her lost monies, interest as well as any other allowed damages for this cause of action.

**46.**

Customers such as Bodet may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unlawful, unfair and deceptive acts and practices of Charter, as described above, present a serious threat to customers such as Bodet.

**47.**

As a result of Charter's violation of the Louisiana Unfair Trade Practices and Consumer Protection Law sections 51:1401 *et. seq.*, Sherman Anti-Trust Act, 15 U.S.C. § 1 and any other causes of action proven at trial Bodet is entitled to restitutive damages for the out-of-pocket expenses and economic harm suffered.

**48.**

Plaintiff is further entitled to pre-judgment interest as a direct and proximate result of Charter's wrongful conduct. The amount of damages suffered by Plaintiff as a result of said acts was a sum certain and capable of calculation and Plaintiff is entitled to interest in an amount to be set forth according to proof.

## CLASS ACTION ALLEGATIONS
**49.**

Pursuant to Fed. R. Civ. P. 23(b)(1),(2) and (3), Plaintiff brings this action on behalf of himself and all others similarly situated, as members of the proposed Class.

**50.**

*Class Definition.* Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), including subclass, of which Plaintiff is a member:

> Persons throughout the United States who reside in geographic areas where Charter has a more that 50% share of the digital cable television market, who subscribe to Charter's digital cable television service during the applicable statute of limitations period(s) and who were required to and did pay a monthly fee to Charter for the use of a set-top box.

> **Louisiana Subclass**

> Persons throughout the State of Louisiana who reside in geographic areas where Charter has a more that 50% share of the digital cable television market, who subscribe to Charter's digital cable television service during the applicable statute of limitations period(s), and who were required to and did pay a monthly fee to Charter for the use of a set-top box.

Excluded from the class are Defendant and any of its officers, directors or employees, the presiding Judge, and any member of their immediate families. Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

**51.**

*Numerosity.* The members of the Class are so numerous and geographically dispersed across the State of Louisiana and throughout the United States such that joinder of all members is impracticable. Plaintiff believes that there are thousands of people in the Class. The exact number and identity of Class is unknown to Plaintiff at this time, and can only be ascertained from Charter's books and records.

**52.**

*Commonality.* There are questions of law or fact common to the Class including but not limited to the following:

a. whether Defendant's acts and omissions alleged herein constitute a violation of Section 1 the Sherman Antitrust Act, 15 U.S.C. § 1;

b. whether Defendant's acts and omissions alleged herein constitute a violation of Section 2 the Sherman Antitrust Act, 15 U.S.C. § 1;

c. whether Defendant's acts and omissions alleged herein constitute a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law sections 51:1401 *et. seq.*;

d. whether a declaratory judgment providing that Defendant violated the above-referenced law is appropriate;

e. whether Plaintiff and the members of the Class have sustained damages and, if so, what is the proper measure of those damages; and

f. whether Plaintiff and the members of the Class are entitled to the relief sought, including injunctive relief and attorney's fees.

### 53.

*Typicality.* The claims of Plaintiff are typical of the claims of the Class, alleged herein.

### 54.

*Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained the undersigned counsel, who are competent and experienced in the prosecution of complex, class action litigation. The interests of the Plaintiff are aligned with, and not antagonistic to, those of the Class.

**55.**

The prerequisites to maintaining a class action for injunctive and equitable relief are satisfied, because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

**56.**

The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards for conduct for Defendant. For example, one court might decide that challenged actions are illegal and enjoin them, while another court might decide that those same actions are not unlawful. Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

**57.**

Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

**58.**

Defendant's alleged uniform scheme and common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

**59.**

***Louisiana Civil Code Of Procedure Article 591 Requirements***. This case satisfies the prerequisites of Louisiana Civil Code of Procedure Article 591. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

**60.**

The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

**61.**

This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

### PRAYER FOR RELIEF

**WHEREFORE,** Bodet prays for a judgment against Charter as follows:

a. For and Order certifying the Class Pursuant to Federal Rules of Civil Procedure Article 23, appointing Plaintiff as the representative of the class, and appointing counsel for Plaintiffs' counsel for the Class;

b. For an order that Charter violated Section 1 of the Sherman Act;

c. For and Order that Charter violated Louisiana's Unfair Trade Practices and Consumer Protection Law;

d. For all recoverable compensatory and other damages sustained by Plaintiff;

e. For all statutory damages available under the claims asserted;

f. For payment of costs of suit herein incurred;

g. For both pre-judgment and post-judgment interest on any amounts awarded;

h.  For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

i.  For such other and further relief as the Court may deem proper.

Respectfully Submitted,

*[signature]*

**JEFFREY BERNIARD, LSBA #29088**
Berniard Law Firm
625 Baronne St.
New Orleans, LA 70113
Telephone: (504)527-6225
Facsimile: (504) 617-6300


**MADRO BANDARIES, PLC # 25339**
Post Office Box 56458
938 Lafayette Street, Suite 204
New Orleans, Louisiana 70156
Telephone:    (504) 218 – 4815
Facsimile:    (504) 324 – 0684

**GREGORY P. DI LEO, LSBA #4943**
**JENNIFER B. EAGAN, LSBA #19847**
300 Lafayette Street, Suite 101
New Orleans, LA  70130
Telephone: (504) 522-3456
Facsimile:    (504) 522-3888